# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>              v.<br><br>TERREN S. PEIZER,<br>    Defendant. | 2:23-cr-0089-DSF<br><br>Order re Government's Motion to Exclude Expert Testimony (Dkt.137) |

The government moves to exclude or limit the testimony of three defense expert witnesses on the basis that their testimony would be irrelevant, unhelpful, and confusing.

## Arthur Laby

The government objects to a limited portion of Arthur Laby's testimony on the topic of "the U.S. Securities and Exchange Commission's Form 8-K disclosure standard and whether Ontrak should have filed a Form 8-K about its deteriorating relationship with Cigna prior to August 19, 2021, when the company filed a Form 8-K disclosure regarding Cigna's formal termination." Motion at 4-5. The government argues that this testimony is irrelevant and unhelpful to the jury because the information that triggers a need for a Form 8-K filing is not the same as information that is material for the purposes of insider trading.

While Defendant disagrees with the government's framing of the issue, his opposition itself demonstrates that the government is correct. Defendant purports to accept that materiality for the purpose of Form

8-K disclosure rules is not the same as materiality for the purposes of insider trading, see Opp'n at 5:17-22, but then he explicitly makes clear that Laby plans to conflate the two.

> What is at issue is materiality and what is and should be taken into account in assessing whether information is material. That question is the same whether being analyzed in the context of corporate disclosures or insider trading claims.

Opp'n at 4-5.

> Specifically, [Laby] will explain that "companies should apply one consistent standard for determining materiality in both the context of alleged insider trading and with respect to company disclosures," and that, as a result, materiality assessments in one context are relevant to the other.

Opp'n at 5-6.

Defendant further confuses the situation when he tries, again, to hedge his statements from just a page earlier in the brief: "Professor Laby will not testify that the Form 8-K Instructions provide a definitive answer to the question of materiality. However, he will explain that the Instructions present relevant evidence of the SEC's views on the materiality of the status of an agreement." Opp'n at 6-7.  Nowhere in the opposition does Defendant legitimately grapple with the inconsistencies in his argument – that the Form 8-K and the insider trading standards for materiality are not the same.  If the requirements for Form 8-K disclosure are not coextensive with the materiality standard for insider trading, the fact that information did not have to be disclosed on a Form 8-K has very little, if any, relevance to whether that information could be traded on by an insider.

The government's motion to exclude this portion of Laby's testimony is granted.

Todd Rahn

The Court understands that because the Court has excluded the lay opinion testimony of Marc Fogarty, Defendant will no longer seek to introduce the expert testimony of Todd Rahn. However, the government has suggested that it may possibly call Fogarty to testify as to his percipient observations at the time of the relevant events. Defendant does not appear to want to introduce Rahn's testimony to counter any such observations by Fogarty. If this is incorrect, Defendant should file a brief statement explaining his position.

Kevin O'Brien

The government also moves to exclude the testimony of Kevin O'Brien as unhelpful to the jury. O'Brien would

> describe the behavioral healthcare industry and its standard business practices, the value that behavioral health companies provide to managed care companies like Cigna, industry norms regarding vendor management and contract negotiations, the typical steps in the contract termination process, and the scope, efforts, and expense associated with CMS health plan audits, which Cigna was undergoing in the summer of 2021 when Ontrak was trying to engage with Cigna to address its concerns.

Opp'n at 14.

In his opposition, Defendant attaches a detailed report from O'Brien discussing his proposed testimony. Opp'n Ex. 2. The Court finds that some of this testimony would be relevant and helpful. The discussion in Section IV(E) would be relevant and helpful to support Defendant's argument that he would not have believed that Cigna's termination of its contract with Ontrak was imminent. O'Brien would testify about industry standards surrounding contracts such as the one between Cigna and Ontrak, e.g., negotiating tactics, common complaints, termination mechanisms, and transition practices on termination. This information is not within the common knowledge of

a juror and would potentially provide useful context for how someone like Defendant might have interpreted communications he was receiving from Cigna.

While the Court will not allow excessive testimony on the other topics described in the O'Brien report, basic background information necessary to understand the Section IV(E) testimony will be allowed.[1] General testimony on the state of behavioral health services in the United States and the need for such services – i.e., ¶¶ 18-25, 31-36 of O'Brien's report – will not be allowed because it is not relevant to the issues in this case. Very limited testimony on the arduous nature of Medicare audits will be allowed. This point is of limited relevance; it is intended to explain why Cigna may not have "engaged more vigorously with Ontrak's responses to Cigna's concerns" during Cigna's Medicare audit. Detailed discussion of such audits is not necessary given that the government does not contest that the audits are extensive. It will be sufficient for O'Brien to describe briefly the scope of a Medicare audit and how it might distract the relevant Cigna personnel from their discussions with Ontrak.

IT IS SO ORDERED.

Date: May 30, 2024

Dale S. Fischer
United States District Judge

---

[1] For example, it may be useful to describe the basic services provided by Ontrak to provide context for why migrating such a contract might necessitate a transition plan.