UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>            v.<br><br>TERREN SCOTT PEIZER,<br>    Defendant. | 2:23-cr-0089(A)-DSF<br><br>Order re Gain and Forfeiture Amount |

  For the purposes of sentencing and criminal forfeiture, the Court must determine "the gain resulting from the offense" committed by Defendant Terren Scott Peizer.  U.S.S.G. § 2B1.4.

  The parties agree that the amount of gain for the purposes of the Sentencing Guidelines range is the same as the relevant amount for the purposes of criminal forfeiture.  The parties also agree that, in the context of this case, Defendant's "gain" should be based on the stock price loss he avoided by committing the insider trading offense.  However, they differ on how the avoided loss should be calculated.

  In brief, the government argues that the entire difference between the price Defendant traded at and the ultimate post-revelation price should be considered as a loss avoided by the insider trading.  This is because, absent Defendant's insider trading scheme, Defendant

would not have been able to trade at all during the relevant period and would have held all of his shares down to the post-revelation price.

Defendant argues that the government's approach overestimates the amount of avoided loss that can reasonably be attributed to the violation. In this case, there was a single relevant revelation – Ontrak's loss of the Cigna contract – that caused an identifiable drop in the Ontrak stock price. Defendant argues that only this drop should be loss avoidance attributable to the offense. Otherwise, Defendant would be penalized for stock price declines that had no relationship to the insider knowledge at issue.

This dispute mirrors a circuit split regarding the proper application of § 2B1.4. The Eighth Circuit has taken the government's view: "[T]he commentary makes clear that gain is the total profit actually made from a defendant's illegal securities transactions. As applied to this case, it means that the gain resulting from [the defendant's] offenses was the amount he actually realized by his trading in call options while he had material inside information." United States v. Mooney, 425 F.3d 1093, 1100 (8th Cir. 2005) (en banc). The Tenth Circuit and the First Circuit, on the other hand, have adopted Defendant's preferred approach. United States v. Nacchio, 573 F.3d 1062, 1075 (10th Cir. 2009) (prison sentences "should be linked to the gain actually resulting from the offense, not to gain attributable to legitimate price appreciation"); United States v. Chan, 981 F.3d 39, 64 (1st Cir. 2020) (Mooney approach "would reflect market fluctuations unrelated to the offense of insider trading, such that co-conspirators could receive differing sentences even when they committed the same crime").

The Court finds, at least in the context of the facts of this case, that the government and the Eighth Circuit have the better approach. One of the critical aspects of the insider trading scheme proven at trial was that Defendant could not have legally entered into a Rule 10b5-1 trading plan while in possession of material nonpublic information. This means that Defendant would not have been able to trade Ontrak securities at all absent the insider trading scheme at the heart of the

case and would have been forced to suffer the entirety of the Ontrak losses that occurred during the period. While the pre-revelation stock price losses may not have been due to the information about Cigna, Defendant's *avoidance* of those losses was due to his illegal trades while in the possession of that information. The Court rejects Defendant's position that he should fortuitously be able to avoid certain types of losses that he would have incurred if he had not committed a crime.

The Sixth and First Circuits' approach effectively seeks to separate out the "legitimate" aspects of a stock trade from the criminal aspects of the same trade. In their view, only the gain or avoided loss relating to the criminal aspect of a trade should be relevant for sentencing. In this case at least, that distinction is untenable. Defendant did not have the ability to engage in normal, legitimate trading while in possession of material nonpublic information and so it makes little sense to separate out a "legitimate" portion of the trades. The sales he made would not have happened absent his crime even if Defendant theoretically might have wanted to avoid a non-Cigna related stock decline.

The Sixth and First Circuits were also concerned that the Eighth Circuit approach would lead to disparate treatment of defendants with similar culpability. To the degree that is true, it stems not from the proper calculation of gain (or avoided loss), but from basing the sentencing range on the amount of gain in the first place. An inside trader presumably will have only a general idea of the magnitude of the effect on stock price that the inside information might have. Two defendants might trade on very similar information in very similar circumstances, but the gain – or avoided loss – could vary greatly based on how the market digests the information once it's made public. In other words, reliance on the vagaries of the stock market is already built into § 2B1.4 whichever side of the circuit split is adopted.

The Court finds that the appropriate amount of avoided loss is the total difference between the amount received for the share sales

3

less the residual value the shares would have had at the end of the day on August 19, 2021.  This amount is $12,711,324.

    IT IS SO ORDERED.

Date: April 29, 2025        _____
                                           The Honorable Dale S. Fischer
                                           United States District Judge