DAVID K. WILLINGHAM (SBN 198874)
  *dwillingham@kslaw.com*
PAUL J. WATFORD (SBN 183283)
  *pwatford@kslaw.com*
JAMIE A. LANG (SBN 253769)
  *jlang@kslaw.com*
**KING & SPALDING LLP**
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone (213) 218-4005
YELENA KOTLARSKY
(*pro hac vice*)
  *ykotlarsky@kslaw.com*
**KING & SPALDING LLP**
1185 Avenue of the Americas,
34th Floor
New York, NY 10036
Telephone (212) 556-2207

STEPHEN A. BEST (*pro hac vice*)
  *sbest@brownrudnick.com*
**BROWN RUDNICK LLP**
601 13th St NW, Suite 600
Washington, DC 20005
Telephone (202) 536-1737
ANGELA M. PAPALASKARIS
(*pro hac vice*)
  *apapalaskaris@brownrudnick.com*
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone (212) 209-4817
STEPHEN COOK (SBN 204446)
  *scook@brownrudnick.com*
**BROWN RUDNICK LLP**
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone (949) 440-0215

Attorneys for Defendant *Terren Scott Peizer*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00089(A)-DSF |
| Plaintiff, | **DEFENDANT TERREN SCOTT PEIZER'S NOTICE OF MOTION AND MOTION FOR BOND PENDING APPEAL** |
| v. | |
| TERREN SCOTT PEIZER | **Date:  July 21, 2025** |
| Defendant. | **Time:  8:30 a.m.** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 21, 2025, at 8:30 a.m. in the courtroom of the Honorable Dale S. Fischer, or as soon thereafter as the matter may be heard, counsel for Defendant Terren Scott Peizer, will move this Court for bond pending appeal. This motion is based on the attached memorandum of points and authorities, the Constitution of the United States of America, all applicable statutory and case law, the record in this case, and any further argument and evidence received by the Court.

The defense met and conferred with the government on this motion. The government reserved the right to provide its position after reviewing this motion.

DATED: June 23, 2025                     By:  /s/David K. Willingham
                                              KING & SPALDING LLP
                                              DAVID K. WILLINGHAM
                                              JAMIE A. LANG
                                              YELENA KOTLARSKY

                                              BROWN RUDNICK LLP
                                              STEPHEN A. BEST
                                              ANGELA M. PAPALASKARIS
                                              STEPHEN COOK

                                              *ATTORNEYS FOR DEFENDANT*
                                              *TERREN SCOTT PEIZER*

# **TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ................................................. 1

II.  LEGAL STANDARD .......................................... 3

III.  ARGUMENT................................................... 5

    A.  Clear and Convincing Evidence Demonstrates That Mr. Peizer Is Not a Flight Risk and Does Not Pose Any Danger to the Community ...... 5

    B.  Mr. Peizer's Appeal Is Not for Delay and Raises a Substantial Question of Law or Fact Likely to Result in Reversal or a New Trial ........ 6

        1.  The denial of an advice-of-professionals instruction raises a substantial question likely to result in reversal or a new trial .......... 7

            a.  Whether an advice-of-professionals instruction was required is at least "fairly debatable" ..................................... 8

            b.  Success on appeal would require reversal or a new trial ...... 13

        2.  The denial of a curative instruction on materiality also raises a substantial question likely to result in reversal or a new trial ........ 13

            a.  Whether an instruction curing the prejudice of the government's conflation of material and non-public information was required is "fairly debatable" ................... 13

            b.  Success on appeal would result in reversal or a new trial ...................................................................... 15

IV.  CONCLUSION ................................................ 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Chiarella v. United States*,
    445 U.S. 222 (1980)..................................................................3, 14, 15

*Dirks v. SEC*,
    463 U.S. 646 (1983)..................................................................3, 14, 15

*Securities & Exchange Commission v. Westport Capital Markets LLC*,
    2020 WL 6270698 (D. Conn. Oct. 26, 2020) ........................................9

*Securities & Exchange Commission v. Westport Capital Markets LLC*,
    613 F. Supp. 3d 643 (D. Conn. 2020) ....................................................8

*Thompson v. United States*,
    223 F.3d 1206 (10th Cir. 2000) ............................................................12

*United States v. Abad*,
    2014 WL 12708710 (N.D. Cal. Aug. 6, 2014) .......................................4

*United States v. Abuhamra*,
    389 F.3d 309 (2d Cir. 2004) ..................................................................1

*United States v. Anshen*,
    993 F.2d 884 (9th Cir. 1993) ..........................................................3, 13

*United States v. Arehart*,
    1989 WL 81624 (D. Or. July 19, 1989) .................................................6

*United States v. Blanchet*,
    518 F. App'x 932 (11th Cir. 2013)..........................................................9

*United States v. Bondaruk*,
    2019 WL 266451 (E.D. Cal. Jan. 18, 2019) ..........................................6

*United States v. Brown*,
    327 F.3d 867 (9th Cir. 2003) ..........................................................3, 16

*United States v. Capps*,
    2023 WL 4156754 (D. Kan. June 23, 2023) ..........................................9

*United States v. DeFries*,
   129 F.3d 1293 (D.C. Cir. 1997)...............................................................10, 11, 12

*United States v. Escobar de Bright*,
   742 F.2d 1196 (9th Cir. 1984) ..........................................................2, 7, 10, 13

*United States v. Garcia*,
   340 F.3d 1013 (9th Cir. 2003) ........................................................................4

*United States v. Giancola*,
   754 F.2d 898 (11th Cir. 1985) ........................................................................4

*United States v. Guo Xin Huang*,
   172 F. App'x 155 (9th Cir. 2006).................................................................16

*United States v. Handy*,
   761 F.2d 1279 (9th Cir. 1985) .............................................................2, 4, 10

*United States v. Hart*,
   906 F. Supp. 102 (N.D.N.Y. 1995) ...............................................................5

*United States v. Hwang*,
   No. 22-cr-240 (S.D.N.Y. Nov. 21, 2024) ......................................................4

*United States v. Ibarra-Alcarez*,
   830 F.2d 968 (9th Cir. 1987) ........................................................................7

*United States v. Morton*,
   999 F.2d 435 (9th Cir. 1993) ......................................................................13

*United States v. Pooley*,
   2024 WL 4792810 (E.D. Cal. Nov. 14, 2024) .........................................9, 13

*United States v. Quinn*,
   416 F. Supp. 2d 133 (D.D.C. 2006)..............................................................10

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) ....................................................................14

*United States v. Yarbrough*,
   852 F.2d 1522 (9th Cir. 1988) ......................................................................7

*Williamson v. United States*,
   207 U.S. 425 (1908).......................................................................................8

DEFENDANT TERREN SCOTT PEIZER'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL

**Statutes**

18 U.S.C. § 3142(b) ........................................................................... 1

18 U.S.C. § 3143(b)(1) ............................................... 1, 2, 3, 4, 5, 6, 9

**Other Authorities**

Report of the Bharara Task Force on Insider Trading (Jan. 27, 2020).................... 15

DEFENDANT TERREN SCOTT PEIZER'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL

## I.    INTRODUCTION

As the Court is well-aware, this case was based on a novel, first-of-its-kind prosecution theory that raised hotly contested questions of law and fact, for which there was not always controlling precedent or a clear-cut answer. Accordingly, Defendant Terren Peizer is appealing his conviction not for any purpose of delay, but because of legitimate questions of law and fact for which the outcome is fairly debatable. Mr. Peizer respectfully requests bond pending appeal under 18 U.S.C. § 3143(b), subject to the same terms and conditions presently in place, which include travel restrictions and a hefty total bond amount of $4.5 million, comprising $2 million in cash and $1.5 million in property by Mr. Peizer, and another $1 million property bond by his close friend Jeffrey Brown. ECF No. 354.

As explained below, Mr. Peizer satisfies each of the requirements imposed by § 3143(b): (1) he is "not likely to flee or pose a danger to the safety" of others, and (2) "the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in" reversal or a new trial. He has therefore "establishe[d] a right to liberty that is not simply discretionary but mandatory," for the statute provides that the Court "'*shall* order the release of the person in accordance with section 3142(b)'" when the requisite showings have been made. *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004) (discussing the same language in § 3143(a)) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 27 (1983), *reprinted in* 1984 U.S. Code Cong. & Admin. News at 3210) (emphasis in original).

*First*, Mr. Peizer is not a flight risk and does not pose a danger to any other person in the community. 18 U.S.C. § 3143(b)(1)(A). The offenses at issue are non-violent. Since learning of the government's investigation in November 2022, Mr. Peizer has faced these allegations responsibly by retaining counsel and attending all hearings where his presence was required. After being indicted in February 2023, he has faithfully observed his bail conditions without any violation. This has remained true even after he was convicted at trial a year ago and has since faced the possibility of significant

incarceration. The same would be true while he waits for a decision on appeal. Indeed, at the sentencing hearing, the government agreed to and the Court granted a self-surrender date, stating that Mr. Peizer is neither a danger nor a flight risk.

*Second*, Mr. Peizer's appeal will include at least two issues that raise substantial questions of law and fact likely to result in reversal or an order for a new trial. *Id.* § 3143(b)(1)(B).

The first issue is the denial of Mr. Peizer's request for an advice-of-professionals instruction. A defendant is entitled to an instruction on his theory of defense so long as the instruction is supported by law and there is some foundation in the evidence to support the theory. *United States v. Escobar de Bright*, 742 F.2d 1196, 1201 (9th Cir. 1984). Mr. Peizer maintains that Ninth Circuit precedent required the advice instruction because it went to the heart of his defense that he lacked fraudulent intent to engage in insider trading where Ontrak, Inc.'s Insider Trading Compliance Officer, Brandon LaVerne, approved of his trades. Moreover, Mr. Peizer had the requisite foundation for this theory because there was evidence at trial from which a reasonable jury could have concluded that he followed Mr. LaVerne's advice, and that Mr. LaVerne was aware of the material facts before providing that advice.

Contrary to the government's argument at trial, the Ninth Circuit has never ruled that an advice instruction is limited to advice given by lawyers, accountants, and tax professionals. Indeed, while not yet squarely addressed by the Ninth Circuit, other courts have given such an instruction when advice was provided by analogous professionals such as regulatory compliance and government contracting experts, because in those settings, too, a defendant's reliance on expert advice concerning the propriety of the defendant's conduct negates unlawful intent. It is thus at a minimum "fairly debatable" whether Mr. Peizer was entitled to an advice instruction at trial, which is all that must be shown to render the issue "substantial" under § 3143(b). *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).

The second issue raising substantial questions of law and fact is the denial of Mr. Peizer's request for a curative materiality instruction. This instruction was necessary to cure the prejudice resulting from the government's repeated blurring of the materiality definition by suggesting to the jury that *all* non-public information is material. Such argument and testimony contravened the Supreme Court's clear command that equating non-public information with material information "conflicts with the principle set forth in *Chiarella* that only some persons, under some circumstances, will be barred from trading while in possession of material nonpublic information." *Dirks v. SEC*, 463 U.S. 646, 657 (1983) (citing *Chiarella v. United States*, 445 U.S. 222, 235 (1980)).

If Mr. Peizer prevails on either of these issues, the Ninth Circuit will likely reverse his convictions or order a new trial.[1] The Ninth Circuit has already explained that the only remedy for the failure to instruct on a defendant's theory of defense is a new trial. *See, e.g.*, *United States v. Anshen*, 993 F.2d 884, at *4-5, 9 (9th Cir. 1993) (Table) (reversing conviction and remanding for a new trial where the court failed to give a "reliance on the advice of an accountant" instruction). Reversal or a new trial is also the appropriate remedy for the Court's failure to give a curative instruction on materiality because the government's statements about materiality impacted the jury's ability to properly apply the materiality standard. *See, e.g.*, *United States v. Brown*, 327 F.3d 867, 872 (9th Cir. 2003) (reversing wire fraud conviction and ordering a new trial where court failed to give appropriate curative instructions regarding the prosecution's inappropriate statements during closing argument, which affected the jury's ability to judge the evidence fairly).

## II.    LEGAL STANDARD

Under 18 U.S.C. § 3143(b)(1), a district court "shall order the release" of a defendant pending the appeal of his conviction if two conditions are met.

---

[1] While Mr. Peizer intends to raise other issues on appeal, he focuses on these two issues in particular for the purposes of this motion.

DEFENDANT TERREN SCOTT PEIZER'S NOTICE OF MOTION AND MOTION FOR BAIL PENDING APPEAL

*First*, the court must find by "clear and convincing evidence" that the defendant "is not likely to flee or pose a danger to the safety of any other person or the community." *Id.* § 3143(b)(1)(A).

*Second*, the court must find that "the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial." *Id.* § 3143(b)(1)(B)(i)-(ii). "[T]he word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Handy*, 761 F.2d at 1281.

The Ninth Circuit has held that "a 'substantial question' is one that is 'fairly debatable,' . . . or 'fairly doubtful.'" *Id.* at 1283 (citations omitted). This is not a stringent standard—the Ninth Circuit has rejected a narrower interpretation limiting "substantial" questions to those that are "close" or "that very well could be decided the other way." *Id.* at 1284 (Farris, J., dissenting) (citing *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)).  Mr. Peizer, "in other words, need not, under *Handy*, present an appeal that will likely be successful, only a non-frivolous issue that, if decided in [his] favor, would likely result in reversal or could satisfy one of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003).

Indeed, "the [district] [c]ourt is not required to 'certify that it believes its ruling[s] to be erroneous' to grant" a motion for bond pending appeal. *United States v. Abad*, 2014 WL 12708710, at *1 (N.D. Cal. Aug. 6, 2014) (alterations in original) (granting motion even though "Abad raises the same arguments that he raised in connection with his motion to dismiss, motions for judgment of acquittal and motion for a new trial," and "the Court has considered and rejected those arguments"); *see also, e.g.*, *United States v. Hwang*, No. 22-cr-240, ECF No. 344, Tr. 109:21-24 (S.D.N.Y. Nov. 21, 2024) (granting motion for bond pending appeal even though "I think the jury was right. I think the instructions were correct. I think the rulings were correct during trial. But the Second Circuit has its own mind to make"). As set forth below, Mr. Peizer seeks review of—at a minimum—a fairly debatable issue of first impression before the Ninth Circuit. That

review is neither frivolous nor for purposes of delay. Bond during that process is appropriate.

## III.    ARGUMENT

### A.    Clear and Convincing Evidence Demonstrates That Mr. Peizer Is Not a Flight Risk and Does Not Pose Any Danger to the Community

Clear and convincing evidence establishes that Mr. Peizer "is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(b)(1)(A).

Mr. Peizer is not a danger to anyone. He has never been convicted of a violent crime, and his current convictions are for non-violent offenses. *United States v. Hart*, 906 F. Supp. 102, 105 (N.D.N.Y. 1995) (granting bond pending appeal where the "defendant was not convicted of any violent crime, or a crime with which violence is commonly associated"). Nor is he in a position to "reperpetrate" the instant insider trading offense, *id.*, as he has been removed from the Ontrak board and from the boards of his other public companies.

Mr. Peizer is also not a flight risk. He is nearly 66 years old and has been a lifelong citizen and resident of the United States. Before 2021, he was a resident of this District for 38 years. Although he moved to Puerto Rico in 2021, he maintains a condominium here in Santa Monica, and travels here frequently for business, to visit family and friends, and to attend medical appointments. As the Court is well aware, Mr. Peizer has been diagnosed with a number of medical conditions, which are closely monitored and treated by physicians located here in the Los Angeles area. His goddaughter to whom he acts as a father figure lives here in Los Angeles. All of his other close family and friends, including his niece and nephew, are located in the United States. Likewise, his bank accounts and the businesses that he devoted his life to building are all located in the United States. Mr. Peizer has every incentive to remain here and see his appeal through.

Importantly, from the moment Mr. Peizer learned of the government's investigation in November 2022, he has responded forthrightly and responsibly by

retaining counsel and responding to subpoenas. After his indictment in February 2023, Mr. Peizer has fully complied with all his bond conditions and made every court appearance. Even after his conviction last June and learning that both the government and Probation were seeking a term of 97 months' imprisonment, Mr. Peizer has not fled and has continued to appear in court when required. Indeed, even the government has agreed that he is an appropriate candidate to self-surrender for his sentence, and the Court agreed at sentencing, stating that Mr. Peizer is neither a danger nor a flight risk.

These facts establish by clear and convincing evidence that the first requirement for release on bond pending appeal is satisfied. *See, e.g.*, *United States v. Bondaruk*, 2019 WL 266451, at *3 (E.D. Cal. Jan. 18, 2019) (finding defendant is "unlikely to flee or pose a danger to the Sacramento community" where there was "no evidence to suggest that Defendant failed to comply during that time with the conditions of his pretrial release"); *United States v. Arehart*, 1989 WL 81624, at *1-2 (D. Or. July 19, 1989) (defendant was not likely to flee or a danger to community because she "has complied with all conditions of release and has appeared at court proceedings in this case" and "is not a physically violent or dangerous person"). In addition, the $4.5 million bond, travel restrictions, and the fact that Pretrial Services still retains custody of Mr. Peizer's passport all further guard against the risk of flight.

**B.    Mr. Peizer's Appeal Is Not for Delay and Raises a Substantial Question of Law or Fact Likely to Result in Reversal or a New Trial**

Mr. Peizer's forthcoming "appeal is not for purpose of delay," and will include two issues, in particular, that "rais[e] a substantial question of law or fact likely to result in . . . reversal [or] an order for a new trial." 18 U.S.C. §§ 3143(b)(1)(B)(i)-(ii). There is no evidence that Mr. Peizer is pursuing this appeal for the purpose of delay.[2] To the contrary, the two issues discussed below were highly contested during Mr. Peizer's trial, and he is appealing the Court's ruling on these issues because they likely impacted the

---

[2] Indeed, Mr. Peizer offered to the government during the meet-and-confer process to expedite the appeal to address any concern they might have regarding delay.

1  jury's understanding and application of the law to the evidence in this case.

2          **1.**    **The denial of an advice-of-professionals instruction raises a**

3          **substantial question likely to result in reversal or a new trial**

4          Mr. Peizer was entitled to an instruction on his "theory of the case" so long as it

5  was "supported by law, and … there is some foundation for the theory in the evidence."

6  *Escobar de Bright*, 742 F.2d at 1201; *see also* Ninth Circuit Model Instruction, No. 4.11

7  (2022), Advice of Counsel (defendant entitled to advice instruction "if it has some

8  foundation" (citing *United States v. Ibarra-Alcarez*, 830 F.2d 968, 973 (9th Cir. 1987)).

9  This is true "even though the evidence may be weak, insufficient, inconsistent or of

10  doubtful credibility." *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir. 1988)

11  (citations omitted).

12          Accordingly, Mr. Peizer requested an advice-of-professionals jury instruction.

13  This instruction went to the heart of his defense that he lacked fraudulent intent to engage

14  in insider trading because Mr. LaVerne—who was Ontrak's CFO and Insider Trading

15  Compliance Officer—determined that Mr. Peizer did not possess MNPI and pre-

16  approved his trading plans. In reliance on this determination, Mr. Peizer entered his

17  trading plans. Mr. Peizer proposed the following instruction, which was identical to Ninth

18  Circuit Model Instruction No. 4.11 (2022) on Advice of Counsel, with the slight

19  modification that it inserted the phrase "or professional" following each mention of

20  "counsel," so that this instruction could be applied to Mr. LaVerne's advice:

21          One element that the government must prove beyond a reasonable doubt is

22          that the defendant had the unlawful intent to defraud. Evidence that the defendant in good faith followed the advice of counsel or professionals would be inconsistent with such an unlawful intent. Unlawful intent has not

23          been proved if the defendant, before acting, made full disclosure of all material facts to an attorney or professional, received the attorney's or

24          professional's advice as to the specific course of conduct that was followed, and reasonably followed the attorney's or professional's recommended

25          course of conduct or advice in good faith.

26  ECF No. 306 at 72.

27          As demonstrated below, other district courts have given an advice-of-professional

28  instruction in similar cases and Mr. Peizer had some foundation in the evidence for the

advice-of-professionals instruction, making it "fairly debatable" whether the instruction should have been given to the jury. Moreover, its denial deprived the jury of a key instruction on intent, and if Mr. Peizer prevails on appeal on this issue, reversal and remand for a new trial will be required.

### a. Whether an advice-of-professionals instruction was required is at least "fairly debatable"

At trial, the Court denied the advice-of-professionals instruction for two principal reasons, each of which raises substantial questions of law or fact.

*First*, the Court stated that Mr. LaVerne was not the type of expert appropriate for an advice instruction because "he's not – an attorney [or] . . . a tax preparer." Tr. 2436:20-23 ("I don't think Mr. LaVerne is a professional . . . in the same sense as the instruction provides."). The Ninth Circuit, however, has never held that the instruction is limited to attorneys, tax preparers, or accountants. Fundamentally, the advice instruction is a recognition that if a defendant relies in good faith on advice from an expert confirming the propriety of his conduct, he does not have the intent to act unlawfully. *See Williamson v. United States*, 207 U.S. 425, 453 (1908). Reliance on a professional's advice negates unlawful intent when the defendant seeks that advice from a securities compliance professional no less than when he seeks such advice from a lawyer, accountant, or tax preparer. Mr. Peizer has not found any federal appellate authority limiting an advice-of-professionals instruction to lawyers, accountants, and tax preparers.

To the contrary, several out-of-circuit district courts have permitted an advice instruction for other professions, including regulatory compliance experts and contracting specialists. For example, in *Securities & Exchange Commission v. Westport Capital Markets LLC*, the defendants' theory was that they relied on a regulatory compliance consulting firm in making statements in SEC filings. 613 F. Supp. 3d 643, 645 (D. Conn. 2020). The court rejected the SEC's argument that reliance on the compliance professionals should not be recognized as a defense because those professionals weren't attorneys, explaining that the "touchstone in examining reliance on

advice is the expertise of the expert, and not her licensure." *Id.* at 646-47. "[I]t would be formalist in the extreme to forbid a defendant from putting forward evidence that it had relied in good faith on persons it thought were experts in the law simply because those persons lacked law licenses." *Id.* at 646. The court instructed the jury that it could consider reliance on these compliance experts in determining whether the defendants acted in good faith. *Securities & Exchange Commission v. Westport Capital Markets LLC*, 2020 WL 6270698, at *7 (D. Conn. Oct. 26, 2020).

Similarly, in *United States v. Blanchet*, defendants were charged with conspiracy to defraud the United States and wire fraud, where they received a federal government contract to provide language services to the United States Special Operations Command ("SOCOM"), based on the misrepresentation of their status as a small business. No. 8:11-cr-00324-T-33TGW, ECF No. 125 at 21 (M.D. Fl. Feb. 28, 2012); *United States v. Blanchet*, 518 F. App'x 932, 934 (11th Cir. 2013). The district court instructed the jury that the defendants' good faith reliance on the advice of counsel "or other professional[s]," including a former SOCOM "professional" turned independent contractor, in writing their proposals for the contract would be inconsistent with an "intent to defraud." *Blanchet*, No. 8:11-cr-00324-T-33TGW, ECF No. 125 at 21 (M.D. Fl. Feb. 28, 2012); *id.* at ECF No. 212, Tr. 41:3-5, 74:13-18; *id.* at ECF No. 211, Tr. 182:2-183:14.

Importantly, to satisfy the requirements of § 3143(b), Mr. Peizer does not have to show that this is a close question for it to be "substantial." *See, e.g.*, *United States v. Pooley*, 2024 WL 4792810, at *1 (E.D. Cal. Nov. 14, 2024) (noting that the panel majority in *Handy* rejected the dissent's alternate interpretation that a substantial question must be "a close question or one that very well could be decided the other way"). Nonetheless, that other courts have permitted an advice instruction in similar circumstances "lend[s] credence to [Mr. Peizer's] position that the question is a close one." *United States v. Capps*, 2023 WL 4156754, at *3 (D. Kan. June 23, 2023). Thus, whether the advice instruction should have been given meets and surpasses the bar for

1  being a substantial question.

2       What is more, this Court has acknowledged that "[t]here could be a situation where

3  reliance on, for example, a licensed professional engineer might be relevant and an

4  appropriate instruction perhaps could or should be given." ECF No. 371 at 5 n.2. That

5  acknowledgment also makes it at least "fairly debatable" that the law does not

6  automatically foreclose giving an instruction based on the advice of a securities

7  compliance professional like Mr. LaVerne. "In circumstances such as this—where a

8  defendant challenges the Court's ruling on a novel question of law and provides a

9  rationale for a contrary interpretation that is supported by arguably applicable legal

10  authority—the Court cannot say that the question for appeal is insubstantial or not

11  susceptible to a different answer." *United States v. Quinn*, 416 F. Supp. 2d 133, 136

12  (D.D.C. 2006).

13       *Second*, the Court also concluded there were "no grounds," Tr. 2437:1, to support

14  an advice-of-professionals defense because Mr. Peizer "didn't follow" the advice he was

15  given, Tr. 2414:10-16, and Mr. Peizer did not provide Mr. LaVerne with the "full range

16  of relevant facts," ECF No. 371 at 5-6. However, the Ninth Circuit requires only "some

17  foundation" in the evidence, *Escobar de Bright*, 742 F.2d at 1201, for giving a defense

18  theory instruction. Indeed, under an analogous standard, the D.C. Circuit found that

19  where the evidence "is equally consistent with an inference . . . that the advice of counsel

20  was used as subterfuge as it was that defendants genuinely and in good faith relied upon

21  it," it was error to refuse the instruction. *United States v. DeFries*, 129 F.3d 1293, 1308

22  (D.C. Cir. 1997). As demonstrated below, Mr. Peizer meets this bar of "some

23  foundation," and thus, this question is also "fairly debatable," *Handy*, 761 F.2d at 1283.

24       Mr. Peizer introduced evidence from which a reasonable jury could have

25  concluded that he (1) adhered to the protocols of his organization by seeking approval

26  for trading from Mr. LaVerne; (2) entered into his trading plan after the earnings

27  announcement during an open trading window, as Mr. LaVerne told him to; and (3) did

28  not include a cooling-off period in his Rule 10b5-1 plan because Mr. LaVerne and other

outside lawyers told him it was not required by the law. *See, e.g.*, Tr. 1688:17-22, 1885:16-21, 1888:7-13, 1902:20-1903:1, 1933:3-1934:3, 1986:21-1987:5, 1989:20-1990:1, 2244:11-2245:1; Exs. 323, 334, 362; *compare* Exs. 42, *and* 44, *with* Exs. 1, *and* 2.

To the extent the Court's view that Mr. Peizer "did not follow" Mr. LaVerne's advice is based on the lack of a cooling-off period, it is critical that a cooling-off period was *not* required by the law. ECF No. 306 at 76 (government stating that it "does not assert . . . that cooling off periods were legally required during the time of the charged crime"). *DeFries* is instructive on this point. While the defendants "did not adhere to" their counsel's advice "to limit severance payments to one month's salary per year of service," counsel "ultimately advised that the final version of the [severance] plan was legal." *DeFries*, 129 F.3d at 1309. As the D.C. Circuit explained, "attorneys often advise their clients to act more cautiously than the law requires. It is an important part of a lawyer's job to warn his clients about behavior that, while not illegal, nonetheless has the potential to embroil a client in controversy." *Id.* Thus, "disregard[ing] one of [their] attorney's *suggestions*" is not a basis to deny the advice-of-counsel instruction, and the district court therefore erred in denying that instruction. *Id.* (emphasis added). As was the case in *DeFries*, Mr. Peizer was advised that, while it was best practice to include a cooling-off period, his trading plans were nonetheless legal without it.

The Court also concluded that there "was insufficient evidence at trial to show that Defendant presented the full range of relevant facts to LaVerne when Defendant conferred with him about the trading plans." ECF No. 371 at 5-6. But that too is "fairly debatable," given the evidence Mr. Peizer introduced at trial. In *DeFries*, while the government "produce[d] a laundry list of supposedly material facts . . . not disclose[d] to counsel," the evidence indicated that counsel "was generally aware of how the union operated and the degree to which the severance plans had been disclosed." *Defries*, 129 F.3d at 1309. "So long as *the primary facts* which a lawyer would think are pertinent are disclosed, or the client knows the lawyer is aware of them, the predicate for an advice-

of-counsel defense is laid." *Id.* (emphasis added). At trial, Mr. Peizer introduced evidence from which a reasonable jury could have concluded that Mr. LaVerne was fully aware of all the material facts concerning the Cigna relationship when Mr. Peizer sought advice about whether he had material non-public information. *E.g.*, Ex. 323; Tr. 2189:20-2190:12. Moreover, Mr. Peizer introduced evidence, including Mr. LaVerne's own testimony, that Mr. LaVerne had more information about Ontrak's relationship with Cigna than Mr. Peizer did. *See, e.g.*, Tr. 1930:14-22, 1933:3-1934:3, 1934:21-1935:4, 1986:21-1987:5, 2244:11-2245:1.

As the company's Insider Trading Compliance Officer, Mr. LaVerne was required by company policy to approve executive trading and evaluate whether a particular individual had material non-public information. Tr. 1884:16-20, 1885:7-13. Mr. Peizer also introduced evidence from which a reasonable jury could have concluded that Mr. LaVerne was qualified to make these determinations.[3] Mr. LaVerne had 15 years of relevant professional experience, and others testified that he was "very familiar with the legal standards" applicable to 10b5-1 plans. Tr. 2177:2-9, 2177:23-2178:4. Mr. LaVerne testified at trial that he had all of the Cigna related information available to him, that he reviewed Mr. Peizer's trading plans, and approved them while relaying there was no material non-public information that would prevent the implementation of each plan at issue. Tr. 1930:14-22, 1933:3-1934:3, 1934:21-1935:4, 1986:21-1987:5, 2244:11-2245:1.

Mr. Peizer established more than "some foundation" for an advice-of-professionals jury instruction, which, in turn, establishes a "substantial" question for

---

[3] Relatedly, the Ninth Circuit has not recognized the distinction "that any 'professional' that is relied on must have some sort of *professional expertise* and not merely occupy a *role* in an organization where the person provides advice on a topic." ECF No. 371 at 5 n.2 (emphasis in original); *see also Thompson v. United States*, 223 F.3d 1206, 1209-10 (10th Cir. 2000) (rejecting government's argument that company accountant could not give expert advice on investment in plastics recycling industry because it was "sufficient that he has expertise in financial advisement, accounting, or tax matters").

appeal. *See Pooley*, 2024 WL 4792810, at *2 (finding substantial question where, even though "there was more than sufficient evidence to support the jury's [guilty] verdict," "the question of defendant's guilt on those counts was fairly debated at trial and it is expected that it will be fairly debated again on appeal").

### b. Success on appeal would require reversal or a new trial

It is well-established in this circuit that "'[t]he right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct . . . can never be considered harmless error.'" *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993) (quoting *Escobar de Bright*, 742 F.2d at 1201-02) (alterations in original). "[R]eversal is required in order to protect the defendant's basic right to a fair trial." *Anshen*, 993 F.2d at *5, 9 (reversing and ordering a new trial because the court did not give an advice instruction). Thus, if the Ninth Circuit agrees that an advice-of-professionals instruction should have been given, it will reverse and remand for a new trial.

### 2. The denial of a curative instruction on materiality also raises a substantial question likely to result in reversal or a new trial

Mr. Peizer requested a curative instruction to ensure that the jury understood the proper standard for materiality. The instruction, which the Court rejected, would have informed the jury that "the law does not require that all traders have equal information." ECF No. 306 at 61; Tr. 2406:8-2408:6.

### a. Whether an instruction curing the prejudice of the government's conflation of material and non-public information was required is "fairly debatable"

The government's representations in opening, closing, and during the testimony of former SEC Commissioner Robert Jackson could have left the jury with the impression that possessing non-public information alone is insider trading, and that all individuals who trade must have equal information.

1    The Court determined that "[n]o juror could have heard the testimony, argument,
2    and instructions and come away with the idea that any and all nonpublic information was
3    material." ECF No. 371 at 6. But throughout trial, the government misstated the
4    materiality standard, falsely equating all non-public information with material
5    information.

6    To meet its burden of proving an insider trading violation, the government must
7    show that the defendant traded on information that is *both* material *and* non-public. *See*
8    *United States v. Smith*, 155 F.3d 1051, 1069 (9th Cir. 1998). The mere fact that
9    information is not public does not prohibit an individual from trading. *See Dirks*, 463
10    U.S. at 657. Equating non-public information with material information "conflicts with
11    the principle set forth in *Chiarella* that only some persons, under some circumstances,
12    will be barred from trading while in possession of material nonpublic information." *Id.*
13    (citing *Chiarella*, 445 U.S. at 235). Traders, including company insiders, have varying
14    degrees of information about a company and can still lawfully trade. Indeed, insiders
15    come into possession of non-public information all the time.

16    The government's representations at trial conflicted with *Dirks* and *Chiarella*.
17    Specifically, the government told the jury in opening that "you will learn that because
18    the defendant had insider information, in this case about Cigna, he could not trade using
19    that information. In fact, the law prohibits him from doing so . . . . It would give corporate
20    insiders like the defendant an unfair advantage, and it would create an unfair playing
21    field for the rest of the public." Tr. 231:12-23.

22    Reinforcing the theme that individuals who trade must all have equal information,
23    Mr. Jackson told the jury that investors and insiders were not on a "level playing field"
24    and that when there is an "uneven" playing field the insider cannot trade. Tr. 1136:18. In
25    fact, the government and its witnesses repeated this phrasing *over 40 times* throughout
26    trial. *E.g.*, Tr. 1135:22-1136:25 ("when we hand over our money, we know that if the
27    people who are working for us are going to trade, they've got to be on the same playing
28    field as us, that is, they've got to have the same information"); Tr. 1146:3-8 ("So before

you go for preapproval, before you ask the lawyer, the first thing you do is say: This is a time where I'm on a level playing field. This is a time where I don't have an advantage over the people who invested with us. You have to represent that before the process even starts."); Tr. 1149:1-5 ("Because if you're on an unlevel playing field, you shouldn't be trading at all. Plan, no plan. If you're on an unlevel playing field, this is the time where you're not supposed to be trading against the people who invested money with you.").

The government reiterated this theme in closing, telling the jury that "[t]his case is about . . . the defendant using his privilege, his access, his control at Ontrak to gather as much information as he could to make trades that the public couldn't, to make trades that the public didn't have the benefit of knowing." Tr. 2633:9-13. The government also emphasized that "the defendant had a lot more information than the rest of the public . . . [a]ll management has more information." Tr. 2639:1-3.

If that were in fact the law, though, no insider could *ever* trade. The Supreme Court has clearly rejected this "parity of information" theory. *See Chiarella*, 445 U.S. at 235; *Dirks*, 463 U.S. at 657; *see also* Report of the Bharara Task Force on Insider Trading, at 3 (Jan. 27, 2020) ("However, insider trading law – as developed by the courts over time – is not built around a notion of fairness in trading. The Supreme Court rejected the 'parity-of-information rule' that would entitle the counterparty to a trade to know all that an insider knows."), *available at* https://www.bhararataskforce.com/.

In light of the Supreme Court's decision in *Chiarella* and the failure to give the curative instruction, there is a substantial question whether the jury was incorrectly left with the impression that all non-public information is material, thus necessitating a curative instruction.

### b.    Success on appeal would result in reversal or a new trial

The government's misrepresentations on the materiality standard prejudiced Mr. Peizer because they wrongly suggested to the jury that Mr. Peizer's possession of non-public information alone made that information material. Whether the information about Ontrak's relationship with Cigna could be deemed material was a dominant focus of the

trial. Given the centrality of the issue at trial, if the jury labored under an incorrect understanding of the concept of materiality due to the absence of a curative instruction, that error could not be classified as harmless. Reversal or a new trial would therefore be warranted if Mr. Peizer prevails on this issue on appeal. *See, e.g.*, *Brown*, 327 F.3d at 872 (reversing wire fraud conviction and ordering a new trial where court failed to give appropriate curative instructions); *United States v. Guo Xin Huang*, 172 F. App'x 155, 158 (9th Cir. 2006) (reversing drug importation conviction where court permitted government to elicit expert testimony on ultimate issue of defendant's state of mind but did not give a proposed curative instruction telling the jury to disregard that testimony).

## IV.    CONCLUSION

This Court should grant Mr. Peizer's motion for bond pending appeal.


DATED: June 23, 2025            By:  */s/David K. Willingham*
                                    KING & SPALDING LLP
                                    DAVID K. WILLINGHAM
                                    PAUL J. WATFORD
                                    JAMIE A. LANG
                                    YELENA KOTLARSKY

                                    BROWN RUDNICK LLP
                                    STEPHEN A. BEST
                                    ANGELA M. PAPALASKARIS
                                    STEPHEN COOK

                                    *ATTORNEYS FOR DEFENDANT*
                                    *TERREN SCOTT PEIZER*