LORINDA I. LARYEA
Acting Chief, Fraud Section
MATTHEW REILLY
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
     1400 New York Avenue NW
     Washington, D.C. 20530
     Telephone: (202) 320-8523
     Email:    matthew.reilly2@usdoj.gov

BILAL A. ESSAYLI
United States Attorney
CHRISTINA SHAY
Assistant United States Attorney
Chief, Criminal Division
ALEXANDER B. SCHWAB
Assistant United States Attorney
Deputy Chief, Criminal Division
U.S. Attorney's Office
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:23-cr-0089-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT TERREN S. PEIZER'S MOTION FOR BOND PENDING APPEAL (ECF No. 425) |
| v. | |
| TERREN S. PEIZER, | |
| Defendant. | |

        Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California, and Lorinda I. Laryea, Acting Chief, Fraud Section,
Criminal Division, and Trial Attorney Matthew Reilly, hereby files
its response to defendant Terren S. Peizer's motion for bond pending
appeal (ECF No. 425).

This opposition is based upon the attached memorandum of points and authorities, the presentence investigation report, the files, records, and decisions of the Court in this case, the evidence established at trial, and any other evidence or argument that the Court may wish to consider.

Dated: July 7, 2025          Respectfully submitted,

LORINAD I. LARYEA
Acting Chief, Fraud Section

BILAL A. ESSAYLI
United States Attorney

CHRISTINA SHAY
Assistant United States Attorney
Chief, Criminal Division


                /s/
_____
MATTHEW REILLY
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

**DESCRIPTION**                                                                    **PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES...............................1

I.    INTRODUCTION...............................................1

II.   APPLICABLE LAW.............................................2

III.  ARGUMENT..................................................4

      A.    Defendant's Appeal Fails to Raise a Substantial
           Question of Law or Facts that Is Likely to Result in
           Reversal or a New Trial...................................4

           1.    Defendant's Argument on the Advice-of-
                Professionals Instruction Neither Raises a
                Substantial Question Nor Is Likely to Result in
                Reversal or a New Trial...........................4

                a.    Defendant Was Not Entitled to an Advice-of-
                      Professionals Instruction as a Matter of Law....4

                b.    Defendant Failed to Establish the Factual
                      Predicates Necessary to Trigger a Reliance on
                      Advice Instruction.............................7

                c.    The Court's Other Instructions and the Standard
                      of Review on Appeal Make it Unlikely that this
                      Issue Would Result in Reversal or a New Trial..14

           2.    Defendant's Argument Regarding a Curative
                Instruction as to Materiality Does Not Raise a
                Substantial Question that is Likely to Result in
                Reversal or a New Trial...........................16

IV.   CONCLUSION................................................20

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>                                                                                    <u>PAGE</u>

3
*SEC v. Westport Cap. Markets LLC.*,
4     613 F. Supp. 3d 643 (D. Conn. 2020) ........................... 5

5
*United States v. Bishop*,
6     291 F.3d 1100 (9th Cir. 2002) ........................ 5, 6, 8, 10

7
*United States v. Botha*,
     No. 2:06-CR-00274-KJD, 2011 WL 320234 (D. Nev. Jan. 31, 2011) ... 19
8
*United States v. Brown*,
9     327 F.3d 867 (9th Cir. 2003) ................................ 19

10
*United States v. Bush*,
11     626 F.3d 527 (9th Cir. 2010) ............................. 14-16

12
*United States v. Capps*
13     2023 WL 4156754 (D. Kan. June 23, 2023) ...................... 6

14
*Unites States v. Daane*
15     475 F.3d 1114 (9th Cir. 2007) ............................... 16

16
*United States v. DeFries*,
17     129 F.3d 1293 (D.C. Cir. 1997) ........................ 11, 13-14

18
*United States v. Evangelista*,
19     122 F.3d 112 (2d Cir. 1997) ................................. 15

20
*United States v. Gerald N.*,
21     900 F.2d 189 (9th Cir. 1990) ................................. 2

22
*United States v. Gomez-Osorio*,
23     957 F.2d 636 (9th Cir. 1992) ................................ 16

24
*United States v. Grimm*,
     No. 2:08-CR-00064-RLH, 2014 WL 496881 (D. Nev. Feb. 6, 2014) ... 7
25
*United States v. Handy*,
26     761 F.2d 1279 (9th Cir. 1985) ........................... 2-3, 5

27
*Unites States v.* Guo Xin *Huang*,
     172 F. App'x 155 (9th Cir. 2006) ............................ 19
28
*United States v. Ibarra-Alcarez*,
     830 F.2d 968 (9th Cir. 1987) .......................... 7, 9, 14

*United States v. Jesenik,*
  No. 3:20-CR-228-SI, 2023 WL 6807141 (D. Or. Oct. 16, 2023) ...... 13

*Unites States v. Kelley*
  864 F.2d 569 (7th Cir. 1989) .................................... 15

*United States v. Marquez,*
  742 F. App'x 300 (9th Cir. 2018) ........................... 5, 15

*United States v. Miller,*
  753 F.2d 19 (3d Cir. 1985) ...................................... 2

*United States v. Munoz,*
  233 F.3d 1117 (9th Cir. 2000) ............................... 9-10

*United States v. Nguyen,*
  19 F. App'x 689 (9th Cir. 2001) ............................... 16

*Unites States v. Quinn*
  416 F. Supp. 2d 133 (D.D.C 2006) ............................... 6

*United States v. Sotelo-Murillo,*
  887 F.2d 176 (9th Cir. 1989) .................................. 15

*United States v. Swenson,*
  No. 1:13-CR-00091-BLW, 2014 WL 5222438 (D. Idaho Oct. 14, 2014) .. 7

*United States v. Thomas,*
  612 F.3d 1120 (9th Cir. 2010) ................................. 19

*United States v. Travers,*
  114 F. App'x 283 (9th Cir. 2004) ....................... 7, 11, 14

**STATUTES**

18 U.S.C. § 3143(b) ....................................... 2, 3, 7, 16

**OTHER AUTHORITIES**

Ninth Cir. Model Criminal Jury Instruction 4.11............... *passim*

H. Rep. No. 907, 91st Cong., 2d Sess. 186-87 (1970)................. 2

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3           The trial of defendant Terren S. Peizer presented a classical
4  insider trading theory and involved well-trodden legal and factual
5  questions.  Accordingly, there are no substantial issues for appeal
6  that warrant defendant's motion for release pending appeal.
7  Defendant champions a novel legal theory that a defendant is entitled
8  to an advice-of-professional instruction outside of the established
9  attorney, accountant, or tax preparer settings.  Tellingly, defendant
10  cites to no Ninth Circuit authority supporting his proposed
11  instruction and has provided no compelling response to the fact that
12  the Ninth Circuit Model Jury Instruction on advice-of-counsel only
13  names those three professions.  <u>See</u> Ninth Cir. Model Criminal Jury
14  Instruction 4.11 ("Advice of Counsel").

15          Nonetheless, even if defendant were correct that there is a
16  substantial question as to whether his proposed instruction had a
17  legal basis, he is not likely to achieve reversal or a new trial on
18  appeal.  The Court found, factually, that defendant neither disclosed
19  all material information nor followed the specific course of conduct
20  provided by Ontrak CFO Brandon LaVerne.  He must have done both to
21  justify an instruction.  He did neither.  And, in any event, the
22  Court's other instructions on willfulness, intent, and knowledge all
23  adequately covered defendant's theory of the case and would preclude
24  the need for a new trial.

25          Lastly, defendant's arguments concerning a substantial issue
26  related to a curative instruction on materiality are baseless.  A
27  full reading of the statements that defendant alleges are misleading
28  reveal that they were nothing of the sort.  In fact, the government

continually tethered its discussion of material nonpublic information

("MNPI") to materiality.  Moreover, the Court's instructions on

materiality ensured that the jury applied the proper standard when

evaluating the elements for conviction.  On these grounds, defendant

has simply failed to identify a substantial question for appellate

review.

For these reasons, defendant's motion for bond pending appeal

should be denied as he has failed to establish there is a substantial

issue likely to result in reversal or a new trial.

## II.  APPLICABLE LAW

In enacting the Bail Reform Act of 1984, Congress intended "to

reverse the presumption in favor of bail," United States v. Miller,

753 F.2d 19, 22 (3d Cir. 1985), and "to toughen the law with respect

to bail pending appeal." United States v. Handy, 761 F.2d 1279, 1283

(9th Cir. 1985).  Congress recognized that, "[o]nce a person has been

convicted and sentenced to jail, there is absolutely no reason for

absence of exceptional circumstances."  H. Rep. No. 907, 91st Cong.,

2d Sess. 186-87 (1970) (regarding D.C. Code model for bail pending

appeal provision in Bail Reform Act of 1984), quoted in Miller, 753

F.2d at 22; see also United States v. Gerald N., 900 F.2d 189, 191

(9th Cir. 1990) (recognizing that "under the Bail Reform Act of 1984

it is no easy matter to obtain bail pending appeal").

Thus, under 18 U.S.C. § 3143(b), a defendant who has been found

guilty and sentenced to imprisonment is ineligible for bail pending

appeal unless: (1) he proves "by clear and convincing evidence that

[he] is not likely to flee or pose a danger to the safety of any

other person or the community if released"; and (2), as relevant

here, his "appeal is not for the purpose of delay and raises a

1  substantial question of law or fact likely to result in (i) reversal,
2  (ii) an order for a new trial[.]" 18 U.S.C. § 3143(b)(1).  The
3  defendant bears the burden of satisfying these requirements.  Handy,
4  761 F.2d at 1283.

5      In Handy, the Ninth Circuit explained that "the word
6  'substantial' defines the level of merit required in the question
7  raised on appeal[.]"  Id. at 1281.  A "substantial question" is one
8  that is "fairly debatable" or "fairly doubtful."  Id. at 1283.
9  "[F]airly debatable" does not merely mean the issue is not frivolous.
10 Rather, it "is one of more substance than would be necessary to a
11 finding that it is not frivolous."  Id.  "Fairly debatable" questions
12 include those that are "novel and not readily answerable," or that
13 pose issues "debatable among jurists of reason." Id. at 1281-82
14 (quotation marks omitted).

15     As for the nature of the "substantial question" a defendant must
16 raise, "the phrase 'likely to result in reversal' defines the type of
17 question that must be presented." Id. at 1281.  The "substantial
18 question" must be one that is "likely" to result in reversal or a new
19 trial. 18 U.S.C. § 3143(b)(1)(B).  While this standard does not
20 require that reversal be more likely than not, Handy, 761 F.2d at
21 1281, neither is it so toothless that it eviscerates Congress' intent
22 to "tighten[] the standards for bail pending appeal," id. at 1283.

23     Neither of defendant's proposed appellate issues raises a
24 substantial question meeting the requirements for bail pending
25 appeal.

III. **ARGUMENT**[1]

    A.    **Defendant's Appeal Fails to Raise a Substantial Question of Law or Facts that Is Likely to Result in Reversal or a New Trial**

        1.    <u>Defendant's Argument on the Advice-of-Professionals Instruction Neither Raises a Substantial Question Nor Is Likely to Result in Reversal or a New Trial</u>

                *a.    Defendant Was Not Entitled to an Advice-of-Professionals Instruction as a Matter of Law*

Defendant again raises rejected arguments seeking an unrecognized advice-of-professional instruction, which is unsupported by the trial evidence. Repackaging these arguments in the veil of a "substantial question" under the Bail Reform Act does not salvage their inherent flaws or weak foundation. Defendant claims that this is a substantial question, but the omission in his brief of any Ninth Circuit case requiring it outside of an attorney, tax preparer, or accountant is glaring.

As a starting point, the Ninth Circuit wrote a pattern jury instruction clearly discussing three professions that could trigger an advice-of instruction. Ninth Cir. Model Criminal Jury Instruction 4.11. The Circuit could have written a broader instruction in the pattern or offered a malleable concept where the nature of the profession and advice were analyzed, but it did not. This is consistent with the Circuit's cases. In the leading Ninth Circuit case on the contours of the advice-of-professionals instruction, the court's decision was limited to either a "tax professional" or an

---

[1] Although the government notes that defendant's access to financial resources and his frequent travel raise the prospect that he might flee if not detained pending appeal, the government does not press this argument in opposing defendant's motion for release pending appeal. Similarly, the government does not challenge that defendant could establish that his appeal is not for the purposes of delay.

4

1  "accountant" in "cases of tax fraud and evasion." <u>United States v.</u>

2  <u>Bishop</u>, 291 F.3d 1100, 1106-07 (9th Cir. 2002); <u>see also</u> <u>United States</u>

3  <u>v. Marquez</u>, 742 F. App'x 300, 301 (9th Cir. 2018) (affirming district

4  court's refusal to instruct on the advice-of-counsel defense when the

5  individual consulted "was [not] an attorney"). <u>Marquez</u> demonstrates

6  that when legal advice – like the purported advice relied on here –

7  comes from a non-attorney, there is no basis for an instruction.

8      For his proposition, defendant relies on out-of-circuit district

9  court cases that are all highly distinguishable. <u>See</u> ECF No. 362 at

10  13-16.[2]  None of defendant's cases stand for the proposition that a

11  non-attorney can give legal advice and trigger an advice instruction,

12  as he suggests here.  Defendant's novel rule foreshadows a dangerous

13  precedent where any type of professional can give legal advice[3] – no

14  matter his or her lack of legal training or licensure – and trigger a

15  mandatory advice instruction.  Additionally, defendant's cases

16  concern highly technical and specialized fields and do not suggest

17  that purported advice from a CFO with no legal training and minimal

18  training in insider trading compliance necessitates an advice-of-

19  professionals instruction.  Order Denying Motion for New Trial

20  _____

21     [2] In discussing the types of situations presenting substantial
    questions that are fairly debatable, <u>Handy</u> includes neither circuit
22  splits nor opinions inconsistent with out-of-circuit district court
    opinions. 761 F.2d at 1281.

23     [3] Defendant's quotes a case that claims it is "formalist in the
    extreme" to "forbid a defendant from putting forward evidence that it
24  had relied in good faith on persons it thought were experts in the law
    simply because those persons lacked law licenses."  ECF No. 425 at 15.
25  However, that particular quote comes from a decision on a motion in
    limine permitting evidence of advice provided by consultants at trial.
26  <u>SEC v. Westport Cap. Markets LLC.</u>, 613 F. Supp. 3d 643, 646 (D. Conn.
    2020).  Of course, defendant has not claimed, and could not claim, that
27  he was prevented from putting forward any evidence concerning the
    purported advice Mr. LaVerne gave to defendant.  Defendant was
28  permitted at trial to put on a full range such evidence and essentially
    dedicated two entire defense witnesses to this topic.

1  ("October 25, 2024 Order") (ECF No. 371 at 5) ("The evidence showed
2  that LaVerne had received relatively minimal training in insider
3  trading compliance. Insider trading compliance was one of his roles
4  at Ontrak – and not even his primary one. It was not a formal
5  profession with highly skilled knowledge, training, licensing, and
6  experience as is the case with a lawyer or accountant.")

7        Defendant cites United States v. Capps from the District of
8  Kansas but that case is inapplicable. 2023 WL 4156754, at *3 (D.
9  Kan. June 23, 2023). In Capps, the court decided "to instruct the
10  jury prior to opening statements and to not re-instruct the jury at
11  the close of evidence or after closing arguments." Id. The Court
12  then primarily relied on the fact that the Tenth Circuit "certainly
13  did not endorse what it referred to as the Court's 'unconventional
14  approach.'" Id. In short, the decision to find a substantial
15  question there was largely driven by the controlling circuit's
16  critical statements on the trial court's practice. Id. No such
17  guidance from the Ninth Circuit exists here and, to the contrary, the
18  only decisions from the Ninth Circuit and its model instruction are
19  consistent with the Court's holding that the advice-of-professionals
20  instruction was not applicable here.[4] See Bishop, 291 F.3d at 1106-
21  07; Ninth Cir. Model Criminal Jury Instruction 4.11. When a court
22  complies with the Ninth Circuit model instruction – as the Court did
23  here – that is indicative that no substantial question is raised. See

24  _____

25        [4] Defendant also cites United States v. Quinn from the District
26  of the District of Columbia, but there the court characterized the
   issue as a novel question of law, 416 F. Supp. 2d 133, 136 (D.D.C.
   2006). Here, when considering Ninth Circuit law, defendant's present
27  question is not novel. Moreover, defendant has identified no
   controlling legal authority on this court indicating that the advice-
28  of-professionals instruction is recognized outside of attorneys, tax
   preparers, and accountants.

1  <u>United States v. Swenson</u>, No. 1:13-CR-00091-BLW, 2014 WL 5222438, at

2  *2 (D. Idaho Oct. 14, 2014) (finding that issuance of Ninth Circuit

3  model instructions related to a purported vouching issue rendered no

4  substantial question).

5              b.   *Defendant Failed to Establish the Factual*
                    *Predicates Necessary to Trigger a Reliance on*
6                   *Advice Instruction*

7      Defendant separately argues that it is fairly debatable whether

8  there was a sufficient foundation in the evidence to compel an

9  advice-of-professionals instruction.  In the advice-of-counsel line

10 of cases, the Ninth Circuit has not hesitated to affirm district

11 court decisions that there was an insufficient basis to require an

12 instruction.  <u>See, e.g.</u>, <u>United States v. Travers</u>, 114 F. App'x 283,

13 288 (9th Cir. 2004) (rejecting argument that district court

14 improperly rejected advice-of-counsel instruction where evidence

15 failed to establish that defendant met necessary prerequisites).  As

16 described in detail below, because of defendant's failure to disclose

17 all relevant facts or to follow the specific course of conduct

18 recommended, it is not a close question whether the evidentiary

19 grounds were laid.  <u>See</u> <u>United States v. Grimm</u>, No. 2:08-CR-00064-

20 RLH, 2014 WL 496881, at *2 (D. Nev. Feb. 6, 2014) (finding that where

21 a court denies an advice-of-counsel instruction based on the absence

22 of a sufficient foundation for the instruction, it is not a

23 "substantial question" under § 3143(b)).  There was not a foundation

24 in the record to justify issuing the requested instruction.  The

25 Court properly executed its gatekeeping function in denying the

26 instruction when there was an inadequate basis for one. <u>See</u> <u>United</u>

27 <u>States v. Ibarra-Alcarez</u>, 830 F.2d 968, 973 (9th Cir. 1987) ("The

28 district court did not err in refusing to instruct the jury on the

7

legal effect of a defendant's reliance on the advice of counsel"
where evidence did not show that defendant "made a full disclosure to
his attorney" of his intentions.)

Similarly, even if defendant were correct about a legal
entitlement to an advice of  professional instruction under these
circumstances, he is incorrect that it is likely result in reversal
or a new trial.  That is because, as the Court concluded, defendant
did not meet the factual predicates that would trigger such an
instruction. See October 25, 2024 Order at 5-6 ("there was
insufficient evidence at trial to show that Defendant presented the
full range of relevant facts to LaVerne when Defendant conferred with
him about the trading plans"); Tr. 2414:14-16 ("To the extent he was
given advice, it was to have a cooling-off period, and he certainly
didn't follow that.")  Thus, if there had been error, it would have
been harmless.  Under these circumstances, the deficiencies in
defendant's factual arguments with regard to an advice instruction:
(1) do not raise an independent substantial question; and (2) make it
unlikely that, even if he were to prevail on his instruction issue,
it would result in reversal or a new trial.

It is black letter law that to be entitled to an advice
instruction (for attorneys, accountants, and tax preparers) there
must be "some foundation" "the defendant, before acting, made full
disclosure of all material facts" and "reasonably followed the . . .
recommended course of conduct or advice in good faith."  Ninth Cir.
Model Criminal Jury Instruction 4.11 ("Advice of Counsel"); see also
Bishop, 291 F.3d at 1107 ("a defendant claiming good faith reliance
on the advice of a tax professional must have made full disclosure of
all relevant information to that professional[; t]he district court

8

1   applied the correct legal standard when it found the reliance defense

2   inapplicable to defendants because they did not make full

3   disclosures."); see also United States v. Munoz, 233 F.3d 1117, 1132

4   (9th Cir. 2000) (affirming the refusal to give an advice of counsel

5   instruction where "the two attorneys who drafted the opinion letters

6   were not given all of the material facts by McGregor or any other

7   defendant"); United States v. Ibarra-Alcarez, 830 F.2d 968, 973 (9th

8   Cir. 1987) (to qualify for an advice of counsel instruction, a

9   defendant must demonstrate that he fully disclosed to his attorney

10  all material facts).

11      Defendant cannot claim to have made a full disclosure of

12  material facts to Brandon LaVerne because the record was abundantly

13  clear that he did not.  Recognizing this fatal flaw, defendant

14  attempts to invert the standard.  Essentially, he argues that it

15  becomes irrelevant that defendant did not disclose all material facts

16  to Mr. LaVerne if it is later offered that Mr. LaVerne "was fully

17  aware of all the material facts" at the time of the purported advice.

18  ECF No. 425 at 17-18.  Putting aside that there is no evidence that

19  defendant actually — at any point - *sought advice* about whether he

20  had MNPI as defendant now baldly asserts,[5] defendant puts forth a

21

22      [5] Defendant cites Tr. 2189:20 - 2190:12, ECF No. 425 at 18, for
    the proposition that "At trial, Mr. Peizer introduced evidence from
23  which a reasonable jury could have concluded that Mr. LaVerne was fully
    aware of all the material facts concerning the Cigna relationship when
24  Mr. Peizer sought advice about whether he had material non-public
    information."   However, that citation references Rob Newton's
25  subjective testimony about his comfort with Mr. LaVerne exercising the
    role of insider trading compliance officer and his view of information
26  within the company.  Nowhere does it reference defendant seeking advice
    as to whether he had MNPI.  Defendant's other citation, to Ex. 323,
27  also fails to support this assertion.  Exhibit 323 is a text message
    conversation from January 2021 and does not contain defendant seeking
28  advice if he has MNPI from Mr. LaVerne.  It would be impossible for
    *(footnote cont'd on next page)*

9

test that is wholly inconsistent with the clear requirement that the defendant take the action of disclosing all material facts to trigger the request instruction. Cf. Munoz, 233 F.3d at 1132 (affirming denial of advice of counsel instruction where the defendant "offered no evidence that he consulted any attorney, including either of the two who drafted the opinion letters, on the legal status of the shelter investments"). Worse, defendant does not even offer evidence that defendant had any conversation or obtained any form of assurance that Mr. LaVerne had all the same facts as he did before purportedly relying on this advice.[6] Defendant's test is wholly inconsistent with the requirement that he disclose the relevant information and instead allows for a *post-hoc* reconstruction to determine if Mr. LaVerne in fact had the same information that defendant had. This is not how advice-of-counsel instructions operate and, if there were a broad-based advice-of-professionals instruction, it would surely not permit such an inversion of the fundamental disclosure requirement. See Bishop, 291 F.3d at 1107 ("The district court applied the correct

---

defendant to be seeking such advice in Ex. 323 because the events constituting the MNPI that defendant had and traded on had not yet occurred.

[6] Remarkably, defendant's long citation for the proposition that Mr. LaVerne approved the 10b5-1 plans "while relaying there was no material non-public information that would prevent the implementation of each plan at issue[,]" ECF No. 425 at 18, provides no support for Mr. LaVerne relaying that purported conclusion to defendant. And – more importantly – it contains no testimony concerning any conversation where defendant and Mr. LaVerne discussed MNPI or where defendant either asked or received any assurance as to what Mr. LaVerne knew. In fact, the cited testimony contains an acknowledgment that it was Mr. Mayhew, not Mr. LaVerne, who was "his lead" with regard to providing defendant information about Cigna. Tr. 1935: 1-4 ("Q. You knew that he got his information from those management meetings that the jury has heard a lot about? A. Yeah. And Jonathan knew folks there, so that would -- that was his lead.").

1    legal standard when it found the reliance defense inapplicable to

2    defendants because they did not make full disclosures.")

3        Even defendant's key case on this issue, the out-of-circuit

4    decision in DeFries, makes clear that for the instruction to be

5    triggered: the "primary facts" must be disclosed by defendant or

6    defendant must "know the lawyer is aware of them."  129 F.3d at 1309.

7    The evidence at trial was devoid, even on the DeFries standards, of

8    evidence that defendant made a disclosure to Mr. LaVerne or that

9    defendant knew that Mr. LaVerne had all of the same key facts that

10   defendant had.  See October 25, 2024 Order at 6-7.  Instead,

11   defendant asks the Court to now *assume* that defendant knew – or in

12   some way confirmed – that Mr. LaVerne had the same information as he

13   did.  Cf.  Travers, 114 Fed. Appx. at 288 (affirming denial of

14   advice-of-counsel instruction where the defendant never "discussed

15   the legality of the script with the lawyer himself" and "the evidence

16   at trial did not establish that [the defendant] had ever

17   affirmatively sought the advice of counsel with regard to the

18   script") (emphasis added).

19       Furthermore, at trial, it was established that defendant lied

20   about and concealed facts from Mr. LaVerne.  There is no evidence

21   that defendant shared the analysis from his conversations with

22   Jonathan Mayhew concerning the deteriorating situation with Cigna in

23   advance of entering into the May 10b5-1 Trading Plan. See, e.g., Tr.

24   828:18 - 830:17 ("Jonathan would be saying to us, I don't think this

25   looks good at all"; Mayhew, the CEO, "was very concerned").

26   Defendant decidedly did not share with Mr. LaVerne that he was

27   providing his negative views about Ontrak's stock to his trading

28   friends in the weeks leading up to the August Trading Plan.  Tr.

1    2078:14 – 2080:10 ("Q. Do you know that during this time period, sir,

2    the defendant was texting his friends and buddies and telling them to

3    sell their Ontrak shares as well? A. No.")  Mr. LaVerne went on to

4    admit that if defendant told his trading friends to sell, it would

5    violate the company's insider trading policy.[7]  Tr. 2079:23-25 ("Q.

6    So that would actually be a violation of your own insider trading

7    policy; would it not?  A.   Yeah.  If he's telling someone to sell.")

8    And, as argued in the government's brief opposing a new trial, there

9    is no evidence he shared his own assessment – as the Executive

10   Chairman of the company and Chairman of the Board – that the

11   relationship with Cigna was like baby undergoing chemotherapy or, in

12   August, that he had called the lead negotiator and was told that

13   "that if I had to call it, that I would say that [Cigna is] going to

14   terminate."  ECF No. 362 at 17.; Tr. 1991:17-20; 2076:19-23.[8]  Worse,

15   the facts show that defendant lied to Mr. LaVerne about the nature of

16   his conversation with the lead negotiator.  Tr. 1983:24 – 1984:8 ("Q.

17   What were you told by Mr. Peizer about the summary from [the lead

18   negotiator] about that conversation? A: That he thinks it's very

19   positive.")  Instead of telling Mr. LaVerne what the lead negotiator

20   actually said, he shared a "positive summary" of the conversation.

21   Tr. 1990:2-21.  Under these circumstances, there is no substantial

22

23        [7] Mr. LaVerne later backtracked on his answer testifying that it
     would only violate the policy if defendant had MNPI, which Mr. LaVerne
24   believed defendant did not have.  Tr. 2080:7-13.

25        [8] To the extent defendant attempts to argue that these omissions
     by defendant are irrelevant because Mr. LaVerne testified that he would
26   have approved the plan even if they had been disclosed, that is a
     perversion of the rule and offers no support for a finding that he is
     likely to receive a new trial if his instruction argument prevails.
27   There is no support for his even more expansive theory: that even if
     all material information is *not* disclosed, if the advice would have
28   been the same, the instruction should – nonetheless – still be given.
     <u>See</u> ECF No. 362 at 17.

1   question that would warrant release pending appeal. See United States

2   v. Jesenik, No. 3:20-CR-228-SI, 2023 WL 6807141, at *12 (D. Or. Oct.

3   16, 2023) (rejecting defendant's claim that there was a substantial

4   question of law or fact concerning court's decision not to give an

5   advice-of-counsel or advice-of-accountant decision where the evidence

6   at trial showed defendant did not make a "full disclosure of all

7   material facts" to those attorneys or accountants).

8       Additionally, the factual record is clear that defendant did not

9   follow Mr. LaVerne's recommended course of conduct or advice. See Tr.

10  2414: 14-16 ("To the extent he was given advice, it was to have a

11  cooling-off period, and he certainly didn't follow that.").

12  Accordingly, even if the requested instruction were recognized, the

13  failure to give it would not be cause for a new trial because the

14  factual predicate was not present and the Court properly refused to

15  provide the instruction on a factual basis.  As articulated in the

16  government's opposition to the motion for a new trial: Mr. LaVerne

17  twice recommended a cooling-off period before entering into his

18  trading plans and asked defendant to wait just a few days to

19  implement his plan in August 2021 (in advance of the forthcoming

20  meeting with Cigna that would result in termination).  ECF No. 362 at

21  18.  Defendant followed none of that advice and even told Mr.

22  LaVerne: "I'll take my advice from our legal counsel" and "I take

23  advice from outside legal counsel."  Trial Ex. 336; Tr. 2065:10-12.

24  Defendant also declined to follow Mr. LaVerne's advice that he could

25  exercise his warrants and not sell the underlying shares.  Tr.

26  2062:23 - 2063:22.

27      Defendant again relies heavily on the DeFries decision for the

28  proposition that disregarding an attorney's suggested course of

13

conduct — as opposed to his ultimate conclusions about legality of
his actions - still satisfies the third prong required to trigger an
advice instruction.  However, the D.C. Circuit used a lesser standard
to permit an advice of counsel instruction, only requiring that the
defendant "relied in good faith on the counsel's advice that his
course of conduct was legal."  DeFries, 129 F.3d at 1308.  The Ninth
Circuit requires more.  Here, a defendant seeking an advice-of-
counsel instruction must show that he "reasonably followed the
attorney's recommended course of conduct or advice in good faith."
4.11 Advice of Counsel; see also Ibarra-Alcarez, 830 F.2d at 973
(emphasis added) ("[t]o qualify for an advice of counsel instruction,
the defendant must show that . . . he relied in good faith on the
specific course of conduct recommended by the attorney"); Bush, 626
F.3d at 539 (holding a defendant "need[s] to present evidence that he
fully advised his attorney of his plan, received advice regarding
that plan from the attorney, and followed that exact advice in good
faith") (emphasis added);  Travers, 114 F. App'x at 288 (requiring a
defendant to follow an attorney's "specific course of conduct
recommended" in order to qualify for an advice-of-counsel
instruction).  By failing to follow Mr. LaVerne's recommended
specific course of conduct, Tr. 2065:8-9 (Q: "And he refused to take
your advice, right?" Mr. LaVerne: "Correct."), defendant failed to
present the necessary foundation to meet this Circuit's required test
for invoking his requested instruction.

> c.  *The Court's Other Instructions and the Standard
> of Review on Appeal Make it Unlikely that this
> Issue Would Result in Reversal or a New Trial*

As yet another reason why defendant would be unlikely to obtain a
reversal or new trial on appeal is that the Court's other instructions,

14

1    including those defining "willfulness[,]" "knowingly," and "intent to

2    defraud" adequately addressed defendant's theory. Tr. 2461:16-17;

3    2460:9-11; 2460:16-19.  Instructively, the Ninth Circuit has affirmed

4    a district court's failure to issue an advice-of-counsel instruction

5    when "[t]he court's instruction that the subject charges required a

6    finding of willfulness adequately reached the defense's theory."

7    Marquez, 742 F. App'x at 301 (reviewing for plain error); Bush, 626

8    F.3d 527, 539 (9th Cir. 2010) (affirming district court's decision not

9    to give an advice-of-counsel defense and stating the Ninth Circuit has

10   "repeatedly recognized that the failure to give a requested instruction

11   is not reversible error 'if other instructions, in their entirety,

12   adequately cover that defense theory'"); see also United States v.

13   Evangelista, 122 F.3d 112, 118 n.5 (2d Cir. 1997) ("we think that the

14   district court's general willfulness instruction was sufficient to

15   apprise the jury of the [the defendant's] reliance-on-advice theory")

16   (citing United States v. Kelley, 864 F.2d 569, 573 (7th Cir.

17   1989) (affirming conviction for willfully filing false tax return

18   because district court's "instructions on willfulness necessarily

19   encompassed [the defendant's] theory of good faith reliance on

20   counsel's advice")).

21        As a final matter, the question of whether defendant established

22   the factual predicate to trigger the instruction will likely be — and

23   should be – decided under an abuse of discretion standard of review,[9]

24   _____

25        [9] Contra United States v. Sotelo-Murillo, 887 F.2d 176, 179-80
     (9th Cir. 1989) (discussing the intra-circuit split "over the proper
26   standard of review of the district court's determination that a jury
     instruction on the defendant's theory of the case is not warranted by
27   the evidence" and finding certain cases reviewing the question de
     novo).  While abuse of discretion should be the applicable standard
28   here given the inherent factual nature of the Court's determinations,
                                        *(footnote cont'd on next page)*

                                   15

1    further undermining defendant's ability to establish that he is

2    likely to obtain a reversal or new trial on the issue raised.  Bush,

3    626 F.3d at 538-39 ("We review a district court's determination 'that

4    a factual foundation does not exist to support a jury instruction

5    proposed by the defense for an abuse of discretion.'")(quoting United

6    States v. Daane, 475 F.3d 1114, 1119 (9th Cir. 2007)); United States

7    v. Nguyen, 19 F. App'x 689, 690 (9th Cir. 2001) ("We review for abuse

8    of discretion a district court's factual findings vis-a-vis a 'theory

9    of the case' instruction.").

10        For all of these reasons, even if defendant were correct that

11   there is a substantial question concerning whether an advice-of-

12   professionals instruction should have been given, because of the

13   other factual and legal issues foreclosing reversal or a new trial on

14   this question, defendant cannot establish – as he must – that it is

15   likely he would be granted a new trial or reversal.  Accordingly,

16   defendant has failed to meet his burden under § 3143(b) entitling him

17   to release pending appeal.

18        2.   Defendant's Argument Regarding a Curative Instruction
               as to Materiality Does Not Raise a Substantial
19             Question that is Likely to Result in Reversal or a New
               Trial

20

21        Defendant also renews his argument that the government misstated

22   the materiality requirement and that the Court's clear instructions

23   on materiality were somehow insufficient.  This is not the case and

24   there is no substantial question on this issue.  In fact, the Court

25   held that defendant's "argument that the jury disregarded the

26   arguments and jury instructions on this issue is pure speculation."

27   October 25, 2024 Order at 7.  This is because the government took the

28   see United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir. 1992),
     the government would prevail under either standard of review.

                                    16

issue of materiality of defendant's non-public information head on at
trial and in its jury addresses.  The Court was correct when it held
"[n]o juror could have heard the testimony, argument, and
instructions and come away with the idea that any and all nonpublic
information was material."  Id. at 6.  However, as he did in his
motion for a new trial, defendant misstates the record by ignoring
the context and surrounding statements by the government and its
witnesses when discussing the nonpublic information that defendant
held.  At trial, government repeatedly and explicitly tied in the
concept of materiality when discussing the nature of the nonpublic
information.

Defendant repeats the same selective citations provided in his
motion for a new trial to ground his complaint.  Defendant fails to
acknowledge that the government provided a thorough chart putting
each of these quotes in the proper and complete context to show that
there was simply no misrepresentation by the government or its
witnesses about the materiality standard.  ECF No. 362 at 20-21
(government's chart correcting defendant's selective citations).  In
one particularly troubling instance, defendant quotes a line from the
government's closing, quoting Tr. 2633:9-13, but ignores that the
paragraphs above and below explicitly frame the discussion in terms
of the materiality standard.  Tr. 2633:2-19 ("You know that a
reasonable investor would want to know this information because guess
what?  The largest Ontrak investor, he wanted to know it.") (emphasis
added).  Defendant cannot cherry pick his way through the factual
record to find a substantial issue.  The complete record shows that
this issue is not "fairly debatable."

Indeed, materiality was a central and repeated issue at trial

17

and hotly contested by the defense.  October 25, 2024 Order at 6. ("A large portion of the case revolved around the concept of materiality and whether the particular Cigna information was material for the purposes of the insider trading laws.")  Remarkably, Defendant ignores that the government directed the jury during closing argument that they were being asked to find that "Defendant knew this information was material."  See Ex. A (Excerpts from Government Closing Slides) at 3.  Further undermining defendant's invented concept that any reference to an "unlevel playing field" was an attempt to read materiality out of the standard is the closing slide that directly linked the "unlevel playing field" concept to the requirement that the information the defendant knew was material. Id.  Lastly, the government spent a considerable amount of time during closing argument explaining to the jury the evidence before it to find that defendant knew the information was material.  Tr. 2484:1-5 (Government closing: "Remember, as the judge said, materiality means would a reasonable investor consider it significant in deciding whether to purchase or sell Ontrak stock?  This comes up again in all three counts, and you need to find the information was material for all three of the counts."); Ex. A at 5 (the government putting a red box around the word "material" in the elements of the offense to highlight it to the jury).)

Additionally, defendant's request for release pending appeal on this question should fail because the Court's instructions on materiality[10] "adequately covered" and accurately stated the materiality requirement necessary for conviction.  Thomas, 612 F.3d

---

[10] Tr. 2463:2-15 ("Not all nonpublic information known to insiders is material.")

18

at 1120; <u>United States v. Botha</u>, No. 2:06-CR-00274-KJD, 2011 WL 320234, at *1 (D. Nev. Jan. 31, 2011) (denying motion for bond pending appeal where court's instructions adequately covered the defendant's preferred instruction that the court declined to give). Therefore, even if defendant were correct that the government or its witnesses misrepresented the materiality requirement (he is not), it would not warrant a new trial or reversal.

Defendant's citations to <u>United States v. Brown</u>, 327 F.3d 867 (9th Cir. 2003) and <u>Unites States v. Guo Xin Huang</u>, 172 F. App'x 155 (9th Cir. 2006) offer no refuge for his argument.  <u>Brown</u> concerns a case where the government "relied heavily on evidence of other bad acts" that "were clearly designed to show [the defendant]'s criminal propensity, in violation of Fed. R. Evid. 404(b)," and "were also arguably an attempt to 'inflame the jury.'"  327 F.3d at 871-72. <u>Huang</u> concerned the improper admission of "ultimate issue" testimony by the government's expert when knowledge was the sole issue during the trial.  172 F. App'x at 158.  Neither case is germane to the question of materiality in an insider trading case and they certainly do not support the proposition that in a case where the jury was properly instructed on materiality, it is likely that a new trial or reversal will be ordered.  <u>See</u> <u>also</u> ECF No. 362 at 23-24 (distinguishing <u>Brown</u> and <u>Huang</u>).

No one disputes defendant's point that the non-public information needed to be material.  What fails is his argument that there was any misrepresentation by the government or deficiency in the Court's instructions on this point.  October 25, 2024 Order at 6 ("No one said or implied anything like [that all nonpublic information is automatically material], and the Court's instructions

are contrary to it.")  In light of the clear instructions by the Court and the absence of any misstatement by the government, there is simply no substantial question on appeal as to whether a curative instruction on materiality was necessary.  Defendant should not be released pending trial on the basis of this purported appellate issue.

**IV.  CONCLUSION**

For these reasons, defendant has failed to meet his burden that there exists a substantial question that is likely to warrant a new trial or reversal.  Accordingly, the Court should deny defendant's motion for release pending appeal.